Eneberg v. Carter.

———————

98   647
42a  338

98   647
128  310

ENEBERG V. CARTER et al., Appellants.

1. **Judgment Lien : EXECUTION.** Under the statutes, all interests of a debtor in land, whether legal or equitable, are bound by the lien of a judgment rendered in the same county, and are subject to sale under an execution issuing upon such judgment.

2. **Will : DEVISE : FEE, WHEN REMAINS IN HEIR.** A will devising an estate to the heirs, and empowering the executor to sell the real estate as soon as could be done without loss, contains no express devise in fee to the executor and none by implication, and the fee in such case remains in the heirs at law, both by the devise and by the statute of descents, until divested by a sale by the executor under the terms of the will. Until such sale no conversion of the estate into money occurs, and the interest of the heir is subject to sale under execution.

3. **———— : ———— : EQUITY.** A conveyance by the heir of his interest after the attachment of a judgment lien against it, and before he was divested of it by a sale under the will by the executor will be set aside in a court of equity at the instance of the purchaser at the execution sale under the judgment.

*Appeal from Jackson Circuit Court.*—HON. TURNER A. GILL, Judge.

AFFIRMED.

*Charles W. Freeman* and *Karnes & Krauthoff* for appellants.

(1) On the principle that equity considers that as done which ought to have been done, it is well established that land directed to be sold and turned to money is to be regarded as personal property, and that it must be so considered in all questions arising with reference

to its character, devolution and disposition. Two questions, then, present themselves in this case. First, whether there has been such a direction to sell the property in question as to bring the case within the limits of the doctrine of equitable conversion, and, second, if so, from what date the conversion directed to be made shall be considered as having taken effect. (2) The language used does not merely confer upon the executor a naked power to sell, but imposes upon him the duty to sell and to divide the proceeds among the five children of the testator named in his will. So that the power of the executor stands coupled with a trust, and other persons are interested in its execution. This being true, the sale cannot be said to depend upon the discretion of the executor, but the provision has the force of an absolute direction to sell. 1 Perry on Trusts, [ 3 Ed.] sec. 251; *Peter v. Beverly*, 10 Pet. 532, 563 *et seq.* ; *Taylor v. Benham*, 5 How. 233, 266 *et seq.* ; *Buck v. Ashbrook*, 59 Mo. 200 ; *Greenough v. Wells*, 10 Cush. 571 ; *Gibbs v. Marsh*, 2 Metc. 243 ; *Duke of Cumberland v. Graves*, 9 Barb. 595. As to the language used in this will, the rule is said to be that "no particular form of expression is necessary in order to create a binding and valid trust, and words of recommendation, request, entreaty, wish or expectation will impose a binding duty upon a devisee by way of trust." *Schmucker v. Reel*, 61 Mo. 596. The word "desire" as used by this testator, in connection with the other parts of the will, under well-settled rules, is to be construed as equivalent to an imperative command that the executor shall sell the land and distribute the proceeds in the manner directed by the will. 2 Redf. Wills, p. 414 and notes; *Turner v. Timberlake*, 53 Mo. 375.

*James T. Clayton* and *Johnson & Lucas* for respondent.

(1) The clause, "I desire that my executor will dispose of all my real estate ( as soon as it can be done

without material loss to my estate )," gave merely a naked trust power to sell, and the real estate descended to the heirs, subject to the exercise of the power. *Compton v. McMahan*, 19 Mo. App. 494; *Reed v. Underhill*, 12 Barb. 113; *Quinn v. Skinner*, 49 Barb. 128; *Crittenden v. Fairchild*, 41 N. Y. 289; *Hetzel v. Barber*, 69 N. Y. 1; *Garvey v. McDevitt*, 72 N. Y. 563; *Beadle v. Beadle*, 2 McCrary, 586. (2) (*a*) There was no conversion, because the executor never exercised the power, and never disposed of the real estate *bona fide* under the provisions of the will. The trial court so found, and there was ample testimony to support the finding. *Compton v. McMahan*,, 19 Mo. App. 494. (*b*) There was no conversion, because the direction to sell was not imperative, but depended upon the happening of an uncertain event. *McClure's Appeal*, 72 Penn. St. 414; *Fletcher v. Ashburner*, 1 White & Tudor's Lead Cas., Pt. 2 [ 4 Am. Ed.] pp. 1134 and 1135.

SHERWOOD, J.—The clauses of the will which form the basis of the present contention read this way :

" 7.  After all the devises and bequests, above provided for, have been satisfied, I desire the remainder of my estate to be equally divided between my children, Mary D. Carter, Marion Alexander, Annie R. Carter, Elizabeth C. Webb and John L. Carter.

" 9.  I hereby appoint Jesse P. Alexander, of Jackson county, executor of my estate.  I desire that my executor will dispose of all of my real estate as soon as it can be done without loss to my estate."

The testator died in 1875.  On the second day of March, 1882, a judgment in favor of the Kansas City Lumber Company was rendered against John L. Carter for five hundred and odd dollars, on which judgment execution was issued to the sheriff on the twenty-seventh day of February, 1883, and his levy of the execution resulted, on the seventh day of April, 1883,

in a sale of Carter's right, title and interest in certain lots in the City of Kansas, plaintiff being the purchaser, and, receiving a sheriff's deed on the date last mentioned, placed the same on record. Carter, on the fifth day of January, 1883, conveyed, or attempted to convey, his interest, being an undivided one-fifth in the land in controversy, to said Alexander. The petition charges that this conveyance, as well as other mesne conveyances, made and participated in by the defendants, were fraudulently made, with a view to evade the collection of the judgment aforesaid; that there was no consideration for any of said conveyances, and asks that so far as concerns Carter's undivided one-fifth interest in the land, said conveyances be set aside and for naught held. Upon hearing the testimony, the court granted the prayer of the petition and decreed accordingly; hence this appeal.

As seen from the premises, the heart of this cause is involved in the question: Had Carter, the devisee, such an interest in the land that the lien of the judgment could operate thereon? Under our statutory provisions, all interests of a debtor in land, whether legal or equitable, are bound by the lien of a judgment rendered in the same county, and consequently are subject to sale under an execution issuing upon such judgment. R. S. 1879, secs. 2730, 2731, 2767, 2354; *Slattery v. Jones*, 96 Mo. 216. So that it may be safely affirmed it is a general rule, a rule almost without exception, that the interests of a defendant debtor in land are never beyond the reach of an execution.

Taking this as the predicate for investigation, the inquiry arises: Do the circumstances, already detailed, exempt the case of the defendant Carter from the operation of the general rule? The claim is made by counsel for the defendants that the clause of the will operated as an equitable conversion of the land covered by it, and that such conversion was of even date with that of the death of the testator

I. If this be true, then the rendition of the judgment created no lien and the plaintiff took nothing by the sheriff's sale and its accompanying incidents. Freeman on Executions [ 2 Ed.] sec. 183, and cases cited. Taking it for granted that the words employed by the testator in the ninth clause of his will were of such a nature as to authorize the land to be converted into money and the money thus raised to be distributed among the five residuary legatees or devisees (as to which concession, see 3 Pomeroy's Eq. Jur., secs. 1159, 1160, and cas. cit.), and conceding further, that, if a conversion of the land into money took place, it occurred upon the death of the testator (3 Pomeroy, section 1162 and cases cited ; *Fletcher v. Ashburner*, 1 White & Tudor's Lead. Eq. Cas. [ 4 Am. Ed.] 1159, and cases cited ); and, conceding that the powers, conferred by the ninth clause of the will upon Alexander, was something more than a mere naked power, was a trust of such a character that it would be recognized and enforced by a court of equity ; conceding all these things, I say, the question still recurs : Did the clause of the will in controversy operate by its own force and without action on the part of the executor, to convert the land into money, and thus place it beyond the lien of the judgment and the execution issued to enforce it ? I am not of the opinion it did, and for these reasons : "It is a well-known maxim, that an heir at law can only be disinherited by express devise or necessary implication, and that implication is defined to be such a strong probability that an intention to the contrary cannot be supposed." 2 Powell, on Devises, 199. And his title cannot be defeated unless there was a disposion of the subject to some other person capable of taking. 1 Fonb. Eq. 51 ; *Habergham v. Vincent*, 2 Ves. 224; *Pickering v. Lord Stamford*, 3 Ves. 493.

In the present case, there was certainly no express devise in fee to the executor, nor are there any such

words in the will as to raise a fee in him by force of a strong implication. Therefore, the fee remained in the heirs at law, both by the devise to them, as well as by the statute of descents, until it should be divested by a sale by the executor under the terms of the will; and until such sale no conversion could occur. *Greenough v. Welles*, 10 Cush. 571 ; Co. Litt. 236*a* ; *Warneford v. Thompson*, 3 Ves. 513 ; *Hilton v. Kenworthy*, 3 East 553 ; *Schauber v. Jackson*, 2 Wend. 13 ; *Lancaster v. Thornton*, 2 Burr. 1028 ; *Bowman v. Matthews*, Forrest Exch. 163 ; 1 Powell on Devises, 233 ; *Beadle v. Beadle*, 2 McCrary, 586 ; *Compton v. McMahan*, 19 Mo. App. 494 ; *Crittenden v. Fairchild*, 41 N. Y. 289 ; 1 Pomeroy's Eq. Jur., sec. 371.

I have been able to find no case where the doctrine of equitable conversion has been so applied as to cut out and dominate the title of the heir except where the donee of the power took a fee by necessary and inevitable implication, or where such fee was in express terms conferred upon such donee ; otherwise the title remains vested in the heirs until the donee of the power actually exercises it.

From the foregoing it follows that the judgment lien and execution had something upon which to operate ; that plaintiff took a title, that the present proceeding was the proper one in which to assert that title, and, therefore, judgment affirmed. All concur, except RAY, C. J., absent, and BARCLAY, J., not sitting.